## UNITED STATES

v.

**Technical Sergeant Orvil L. SCAFF, Jr., FR 448–52–6322, United States Air Force.**

**ACM S27720.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 5 Nov. 1987.

Decided 5 Aug. 1988.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi, Captain Henry J. Schweiter and Lieutenant Colonel Francis T. Lacey, USAFR.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Major Kathryn I. Taylor.

Before HODGSON, FORAY and HOLTE, Appellate Military Judges.

## DECISION

HOLTE, Judge:

On 5 November 1987 the appellant was convicted by a judge alone special court-martial for a single charge of cocaine use. The charged offense, a violation of Article 112a, UCMJ, 10 U.S.C. § 912a, resulted from a positive urinalysis test. Subsequent to the trial, on 18 November 1987, a Sharon G. Simpson presented the following sworn statement to the area defense counsel:

> I visited my ex-husband and children who live in the Ogden area on 24 April, 1987. I met SSgt Scaff ("Von") approximately 3–4 years ago and decided to look him up. On 25 April, 1987, I went with SSgt Scaff to Players West a local bar. While there that evening I met a girl named Suzanne Treace (not sure of spelling). While in the restroom she stated she had some cocaine and gave me a "line" to inhale. She stated she was interested in Von and wanted to dance with him. But first said she wanted me to ask SSgt Scaff to dance, and that while he was dancing she would place some cocaine in his drink. She also had asked me to see if I could get Von to take her home with him. When the bar finally closed all three of us left and went to Von's house (at that time 3258 Ogden Ave, Apt 2). His roommates were not home and he fixed us 2 or three drinks. Suzanne gave me a spoon of cocaine and dumped some more into Von's drink while he was in the bathroom. Later that evening I left without Suzanne. I did not think at the time the cocaine in his drink would get Von in trouble. I have known him for 3 or 4 years and have never known him to do any kind of drugs. Since I left in April I have not contacted him.

Based on the quoted statement, the defense on 30 November 1987 requested that the military judge convene a post-trial Article 39(a) session pursuant to R.C.M. 1102. The basis for the request was newly discov-

ered evidence. On 1 December 1987, the military judge granted the request, directing that such post-trial session would convene at 0800 hours on 5 January 1988 at Hill Air Force Base, Utah, for the purpose of hearing the testimony of Sharon Simpson and Suzanne Treace, if she could be located. On 8 December 1987, Sharon Simpson accepted service of a valid summons to appear at Hill AFB, Utah, at noon on 4 January 1988. On 29 December 1987, the military judge changed the hearing date to 1500 hours on 6 January 1988.

When the military judge convened the post-trial hearing he stated that it was convened pursuant to RCM 1102(b)(2) and (d). He then put on the record the genesis of how and why such session was called and his actions on this matter to date. He then stated that his reason for granting the motion for such hearing was to prevent a possible miscarriage of justice by providing for the securing of apparently extremely significant evidence at the earliest possible time. Sharon Simpson did not appear at the hearing. In essence, the defense asked that the military judge admit the 18 November 1987 post-trial statement, reconsider his findings of guilty and dismiss the charge. The military judge determined that he had no authority to reconsider and change the findings. He further declared that even if he had such authority he did not believe the affidavit to be competent evidence. He then terminated that post-trial session.

In the first assigned error the appellant urges:

THE MILITARY JUDGE ERRED WHEN HE RULED THAT HE HAD NO AUTHORITY TO CHANGE HIS FINDINGS AND, EVEN IF HE DID, THE AFFIDAVIT WOULD NOT BE COMPETENT EVIDENCE.

R.C.M. 923 addresses itself to impeachment of findings and provides that findings which are proper on their face may be impeached only when extraneous prejudicial information was improperly brought to the attention of a member, outside influence was improperly brought to bear upon any member, or unlawful command influence was brought to bear upon any member. R.C.M. 924(c) addresses itself to reconsideration of findings in cases tried before military judge alone. It provides that in trial by military judge alone, the military judge may reconsider any finding of guilty at any time before announcement of sentence. In the case *sub judice* we determine that the findings were proper and there was nothing admitted during the trial that would be grounds for impeachment of the findings. We interpret R.C.M. 924(c) to mean exactly what it says, which is that a military judge may reconsider any findings of guilty at any time *prior* to the announcement of sentence.

The appellant argues that R.C.M. 1102(c) gives the military judge the authority to change a finding of guilty to not guilty, reduce the sentence, set aside the findings and dismiss the charge, or grant a new trial. As authority for their interpretation that the military judge has such authority appellant cites *United States v. Washington*, 23 M.J. 679 (A.C.M.R.1986). We have no difficulty in distinguishing *Washington* from the case before us. From a factual situation alone the court's holding in *Washington* make such inapplicable to the case under consideration. In addition, the court in *Washington* made it clear that such holding applied only to the facts of that case.

The issue before us involves the extent or limitations on a military judge to conduct post-trial sessions subsequent to announcement of sentence, but prior to the convening authority taking appropriate action on the case.

In *United States v. Brickey*, 16 M.J. 258 (C.M.A.1983), the court recognized that the powers of a military judge do not cease with the court-martial's announcement of sentence. They did not state, however, that such powers were unlimited or that such powers extended to every situation that could arise post-trial.

Paragraph 80c, MCM, 1969 (Rev.), in addressing revision proceedings, stated in part, "As the action which may be taken is entirely corrective, a case will not be reopened by the calling or recalling of wit-

nesses or otherwise." The court in *Brickey* interpreted this language of the manual to be concerned only with the reopening of the case and hearing witnesses as to the guilt or innocence.

■ R.C.M. 1102 is based in part on paragraph 80c, MCM, 1969 (Rev.). In the discussion of R.C.M. 1102(b) it is stated that a proceeding in revision may not be conducted for the purpose of presenting additional evidence. We interpret this language to be consistent with the court's interpretation of paragraph 80c, MCM, 1969 (Rev.).

■ R.C.M. 1102(b)(2) provides, "An Article 39(a) session under this rule may be called for the purpose of inquiring into, and, when appropriate, resolving any matter which arises after trial and which substantially affects the legal sufficiency of any findings of guilty or the sentence." In the case *sub judice* the post-trial affidavit in question has the ultimate possibility of affecting the legal sufficiency of the findings. However, as we have already concluded, the military judge was without authority to reopen the case, admit the affidavit and make an adjudication on it which may have altered his original findings. In our opinion, the military judge did exactly what he was empowered or authorized to do. He conducted a post-trial session, and made the post-trial affidavit a part of the record, authenticated the record of trial and forwarded the record of trial to the convening authority for whatever action he deemed appropriate.

We view the purpose of R.C.M. 1102 as a vehicle for precluding a miscarriage of justice from occurring. A strict interpretation of this rule, as written, would be that only hearings in revision and Article 39(a) sessions are permitted. Hearings in revision apply only to those things that occurred during the trial, whereas Article 39(a) sessions imply that the trial was before members. We do not believe that such limited application was the intent of the rule. We conclude that within a logical interpretation there is a third category which is simply called a post-trial session. This session concerns itself with matters occurring sub-sequent to trial, as it did in this case, but before authentication of the record or before action by the convening authority, and those cases tried before a military judge alone. Our ruling here today is consistent with the expanded role of the military judge as discussed in *Brickey*.

We conclude that for the reasons discussed the proceedings and actions taken by the military judge were correct. For the purpose of resolving the post-trial authority of a military judge we need not speculate or resolve whether the post-trial affidavit was admissible. Therefore, this assigned issue is decided against the appellant.

The remaining assignment of error is decided against the appellant. Accordingly the findings of guilty and the sentence are

AFFIRMED.

Chief Judge HODGSON and Senior Judge FORAY concur.