**UNITED STATES, Appellee,**

v.

**Orvil L. SCAFF, Jr., Technical Sergeant, U.S. Air Force, Appellant.**

No. 60,855.
ACM S27720.

U.S. Court of Military Appeals.

Sept. 26, 1989.

For Appellant: *Captain Mark R. Land* (argued); *Colonel Richard F. O'Hair* (on brief); *Lieutenant Colonel Francis T. Lacey,* USAFR.

For Appellee: *Major Kathryn I. Taylor* (argued); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni* (on brief).

*Opinion of the Court*
EVERETT, Chief Judge:

A military judge sitting alone as a special court-martial tried Scaff at Hill Air Force Base, Utah, on a charge that on or about April 27, 1987, he had wrongfully used cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. Contrary to his pleas, appellant was found guilty and sentenced to a bad-conduct discharge, confinement for 3 months, and reduction to E-3. The convening authority approved the sentence; and the Court of Military Review affirmed the findings and sentence. 26 MJ 985 (1988).

Subsequently, we granted review to consider this issue:

WHETHER THE MILITARY JUDGE ERRED WHEN HE RULED THAT HE HAD NO AUTHORITY TO CHANGE HIS FINDINGS AND, EVEN IF HE DID, THE AFFIDAVIT WOULD NOT BE COMPETENT EVIDENCE.

Also, we have before us Scaff's petition for new trial.

I

The Government's case was based on a positive urinalysis and on a somewhat incriminating remark made by appellant. Scaff testified in his own defense and denied having ever used cocaine. During cross-examination, he stated that he had been at a bar on the Friday and Saturday evenings preceding the urinalysis on Monday, April 27.

During his final argument on findings, the individual defense counsel contended that the Government's evidence about the positive urinalysis was defective in various respects; and he suggested:

What all this evidence that the Prosecution has put before you is, Your Honor, is a smoke screen. It's an attempt by the Prosecution to bolster an otherwise weak urinalysis case. The Prosecution has also tried to portray Sergeant Scaff as some kind of a liar. Well, if he's such a big liar, why didn't he get on the stand and testify that he saw somebody put something in his drink the night, or two nights before he gave the urinalysis sample? Or why didn't he convince one of his civilian friends, or one of his friends to come in here and testify that they were at the bar and they saw somebody put something in his drink. You heard Dr. Foltz testify about unknowing in-

gestion. You heard him testify about the amount of cocaine it would take for someone to come up positive. In fact, cocaine could be put into their drink and they might not even know it, and come up positive. Come up with this very result that the Prosecution is trying to rely on. Quite frankly, Sergeant Scaff could have made up a story about that, or had a friend come in here and testify, and there is nothing the Prosecution could have done about that probably.

Despite the defense argument, the military judge returned findings of guilty, then conducted sentencing proceedings, and finally adjourned court on November 5, 1987.

When a post-trial Article 39(a), UCMJ, 10 USC § 839(a), session was held on the afternoon of January 6, 1988, the military judge announced, "by way of introduction," that on November 30 defense counsel had requested him to "convene a post-trial 39(a) session pursuant to RCM 1102 [, Manual for Courts–Martial, United States, 1984] because of newly discovered evidence." On December 1, 1987, the judge had received an affidavit of Sharon G. Simpson, stating:

> I visited my ex-husband and children who live in the Ogden area on 24 April, 1987. I met SSgt Scaff ("Von") approximately 3–4 years ago and decided to look him up. On 25 April, 1987, I went with SSgt Scaff to Players West a local bar. While there that evening I met a girl named Suzanne Treace (not sure of spelling). While in the restroom she stated she had some cocaine and gave me a "line" to inhale. She stated she was interested in Von and wanted to dance with him. But first said she wanted me to ask SSgt Scaff to dance, and that while he was dancing she would place some cocaine in his drink. She later told me she had placed some cocaine in his drink. She also had asked me to see if I could get Von to take her home with him. When the bar finally closed all three of us left and went to Von's house (at that time 3258 Ogden Ave, Apt 2). His roommates were not home and he fixed us 2 or 3 drinks. Suzanne gave me a spoon of

cocaine and dumped some more into Von's drink while he was in the bathroom. Later that evening I left without Suzanne. I did not think at the time the cocaine in his drink would get Von in trouble. I have known him for 3 or 4 years and have never known him to do any kind of drugs. Since I left in April I have not contacted him.

After stating: "Based on this evidence, and after trial counsel indicated that the Government had no objection to the Defense Request," the military judge advised the defense that its "request was granted." Moreover, he "then directed trial counsel to provide for the appearance of Sharon G. Simpson at a 39(a) Session and to make every effort to locate Suzanne Treace ... to ascertain if she had relevant evidence to submit, and if so, to provide for her appearance at the 39(a) Session."

The military judge explained:

> The purpose of my granting defense counsel's request for a post-trial 39(a) Session was to prevent a possible miscarriage of justice by providing for the securing of apparently extremely significant evidence at the earliest possible time. This session, I felt, would not only preserve the evidence, while still relatively fresh in the witness' memory, compared with the state of her memory at some future *DuBay* [*see* n. 5, *infra* (this opinion)] hearing ordered by an Appellate Court, but would, in all likelihood, result in less cost to the Government.

Sharon G. Simpson subsequently accepted a subpoena dated December 8, 1987, to appear at Hill Air Force Base, for the post-trial Article 39(a) session. However, "[s]ome days thereafter ... [the military judge] was informed by trial counsel that the convening authority had decided not to fund the travel of Sharon G. Simpson to the 39(a) session."

Scaff's individual defense counsel then stated that he

> had intended to present the newly discovered evidence to you in the form of Sharon Simpson's testimony....
> We believe that RCM 703(c)(2)(D) and the case law make it clear that if the Govern-

ment persists or declines, or refuses to produce a witness, then one remedy is to abate the proceedings until such time as the Government produces the witness. However, we feel that merely abating these proceedings is inadequate under the facts of this case for at least a couple of reasons. Number one, if you merely abate the proceedings because of the Government's refusal to produce this witness it is our understanding, based on the case law, that you cannot decline to authenticate the record of trial. If that is so, then it is clear to us, based on the Government's conduct to this point, that once you authenticate the record of trial, even though this proceeding may be abated, then the Government will proceed with taking—by the Government, I am referring to the convening authority—will proceed with taking action on the case and press on, and just disregard the fact that these proceedings were abated.

Consequently, what that would mean in effect is that abating these proceedings, that abatement would be meaningless. It would have no impact whatsoever.

Additionally, and probably more important, if abatement of these proceedings were had in this case then, and we wanted to wait until the Government complied with your order to produce the witness, all the while the proceedings are in abatement, an innocent person will be sitting in jail waiting for the Government to make a decision regarding production of the witness.

Accordingly, in light of the fact that we feel abatement of these proceedings would be meaningless, we ask that if the Government persists in refusing to produce this absolutely critical witness, that you exercise your prerogative and dismiss the charges against my client.

Upon inquiry by the military judge, defense counsel conceded that he had no specific precedent concerning the military judge's authority to dismiss charges at this point in the proceedings.

Trial counsel then set forth the Government's position that the court lacked authority to dismiss the proceedings; and he remarked that "the only thing that can happen at this point under Rule 703(c)(2)(D), at this particular proceeding, that is the 39(a) proceeding, at this point be abated and then as a ministerial act that the record be authenticated and allow this case to go forward on appeal." Trial counsel denied any "bad faith" by the Government and noted that "the convening authority has made a decision that the travel of the witness at this time, given the information available to him, is simply unwarranted and premature." In his view, "very little unjust result" would accrue to the accused, because "[h]e has already served roughly two months of his confinement, out of the three month sentence."

The military judge then sought clarification as to how a subpoena had been issued "without setting aside the funds for the travel."[1] Trial counsel replied that the subpoena had been issued at his direction while the witness was in the local area and for that reason he had not felt it necessary to set aside travel funds. Trial counsel added that

it is my understanding that the convening authority, at the time of that particular subpoena had not been briefed by the Staff Judge Advocate. And was subsequently briefed a couple of days after the subpoena was actually issued and after the witness had apparently traveled back to wherever she is from, somewhere in Kentucky, I believe. And the convening authority made the decision and has stuck with that decision all along. It is through my direction that the subpoena was actually served through the legal office and it's my supposition now, reconstructing events, that that was done prior to briefing of the convening authority by the Staff Judge Advocate.

The defense then explained that

as trial counsel indicated, Ms. Simpson does indeed live in Kentucky and we

---

1. The military judge believed that this might be "a violation of the Anti–Deficiency Act."

want the record to be clear that the Government does have her address. They know where she is. She does not live in Salt Lake City or Ogden. She was here merely visiting someone and that's why she went back to Kentucky. It wasn't to avoid having to appear at this hearing or anything like that. She had to get back, she has a job and so forth and obviously it would be unrealistic to expect her to stay someplace for a month waiting for this hearing. And that's why she's back in Kentucky.

Upon inquiry by the military judge, the individual defense counsel represented that the new evidence had come to the knowledge of the defense after trial and between November 11 and November 18, when "she came forward to the Area Defense Counsel Office here at Hill." When the military judge then asked why the evidence "was not discovered prior to the trial," the reply was:

> I assume it was because Ms. Simpson did not come back into the Ogden area until subsequent to the court-martial and did not realize the information she had was significant. In fact, I don't think—I think in her affidavit she indicates that she didn't realize that Sergeant Scaff was even in trouble about this stuff.

After trial, "she somehow learned that he was in trouble and approached the Defense to give the affidavit."

Faced with this situation, the military judge announced:

> I am not going to abate the proceedings as it would seem to provide no real remedy to the accused. I can find no authority which would allow me to dismiss the charges in this case. If the Court of Military Appeals or Court of Military Review wish to say that is inherent in the powers of the Military Judge, so be it. And of course, if they do, that would, I think be a welcome course of action. But at present, I can see no authority to dismiss the charges. Therefore, the only course I can see, that I may legally take, is to have this post-trial 39(a) session transcribed and included with the origi-

nal record of trial so that the convening authority and appellate authorities may consider appropriate action to be taken at their level.

The individual defense counsel then requested that the military judge "consider Sharon Simpson's affidavit as a Defense Exhibit and reconsider ... [his] original findings of guilty."

Ultimately, the military judge decided:

> I don't think I have authority, at least it's not clear to me that I have authority, to reconsider and change the findings. However, if I did, I don't believe the affidavit is competent evidence I can consider. So I am left with no new evidence, unfortunately. Maybe this is something that needs to be corrected in the Manual or by Court decision, that is the situation we find ourselves in now. But absent any clear authority, I cannot reconsider.

## II

### A

■ According to Article 73 of the Uniform Code, 10 USC § 873:

> At any time within two years after approval by the convening authority of a court-martial sentence, the accused may petition the Judge Advocate General for a new trial on the grounds of newly discovered evidence or fraud on the court. If the accused's case is pending before a Court of Military Review or before the Court of Military Appeals, the Judge Advocate General shall refer the petition to the appropriate court for action. Otherwise the Judge Advocate General shall act upon the petition.

New evidence came to the attention of Scaff's defense counsel after trial but before approval by the convening authority— and, indeed, before the record of trial had been authenticated by the military judge. The language of Article 73 leaves unclear whether at that time appellant could have presented a petition for new trial to the Judge Advocate General of the Air Force. Under one interpretation, Article 73 would

allow a petition for new trial to be submitted at any time after trial and until 2 years have passed from the date of approval of sentence by the convening authority. Under another interpretation, a petition for new trial could only be submitted during the period commencing with the approval of the sentence by the convening authority and ending 2 years thereafter. The latter interpretation has the obvious disadvantage that, even if new evidence were discovered immediately after trial, a petition for new trial could not be submitted until after the convening authority had acted on the case; and during this interval witnesses might become unavailable or their recollections might grow dim.

■ Heretofore, we have interpreted Article 39(a) of the Uniform Code to authorize the military judge to take such action after trial and before authenticating the record as may be required in the interest of justice. *United States v. Griffith*, 27 MJ 42 (CMA 1988); *United States v. Brickey*, 16 MJ 258 (CMA 1983); *United States v. Witherspoon*, 16 MJ 252 (CMA 1983). Thus, in *Griffith* we held that the military judge could grant a motion for a finding of not guilty even after the trial had ended, if he concluded that the evidence was legally insufficient.[2] In *Brickey*, we concluded that the military judge was empowered to conduct a post-trial Article 39(a) session to determine whether trial counsel had violated his constitutional duty to disclose exculpatory information. In *Witherspoon*, we made clear that a judge could convene a post-trial session to consider possible jury misconduct.

Judge Cox has pointed out that

if a military judge realizes that he has erred in his ruling or if some other reason moves him to reconsider his decision, then justice would be thwarted if a strict interpretation precludes him from correcting his own error. I believe such construction of the military judge's power will, in the long run, inure to the Government's benefit, for it provides an opportunity to clear up matters before the appellate processes take over.

*United States v. Griffith, supra* at 49 (concurring).

In line with these interpretations of Article 39(a), we conclude that, until the military judge authenticates the record of trial, he may conduct a post-trial session to consider newly discovered evidence and, in proper cases, may set aside findings of guilty and the sentence. Even assuming *arguendo* that, before the convening authority has acted, a petition for new trial may be submitted to the Judge Advocate General pursuant to Article 73, we do not believe that the existence of such a right implies a limitation on the powers of the military judge under Article 39(a). Indeed, Article 39(a) did not exist when Article 73 was enacted as part of the original Uniform Code; and there were no military judges at that time either.

■ RCM 1102(b)(2) states:

An Article 39(a) session under this rule may be called for the purpose of inquiring into, and, when appropriate, resolving any matter which arises after trial and which substantially affects the legal sufficiency of any findings of guilty or the sentence.

*See* RCM 1102(d). If evidence is discovered after trial which would constitute grounds for a new trial under RCM 1210(f)[3], this

---

**2.** However, unlike a Federal district judge, a military judge is not permitted to set aside a finding of guilty which he considers to be against the weight of the evidence.

**3.** This rule provides:
(f) *Grounds for new trial.*
(1) *In general.* A new trial may be granted only on grounds of newly discovered evidence or fraud on the court-martial.
(2) *Newly discovered evidence.* A new trial shall not be granted on the grounds of newly

discovered evidence unless the petition shows that:
(A) The evidence was discovered after the trial;
(B) The evidence is not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence; and
(C) The newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably pro-

might be considered a "matter which arises after trial and which substantially affects the legal sufficiency of any findings of guilty or the sentence" within the meaning of RCM 1102(b)(2). However, even if the drafters of the Manual did not intend such an interpretation of this Rule, we still are persuaded that Article 39(a) of the Code empowers the military judge to convene a post-trial session to consider newly discovered evidence and to take whatever remedial action is appropriate.

 Scaff's counsel became aware of the exculpatory evidence shortly after the trial had concluded; and he promptly requested the military judge to hold a post-trial session under Article 39(a). Quite properly, the judge convened such a session in order to receive relevant testimony. If the witnesses had appeared and their testimony had persuaded the judge that appellant had complied with the requirements prescribed by RCM 1210(f)(2), he would have been empowered to set aside the findings of guilty, so that a rehearing could take place. *Cf. United States v. Griffith; United States v. Brickey; United States v. Witherspoon*, all *supra.*

In that event, if the Government disagreed with the military judge's decision that the evidence had been timely "discovered," that "due diligence" had been shown, and that "a substantially more favorable result for the accused" was likely based on "[t]he newly discovered evidence," *see* RCM 1210(f)(2), it could appeal his ruling to the Court of Military Review pursuant to Article 62, UCMJ, 10 USC § 862.

### B

 The Uniform Code authorizes punishment of a civilian witness who has been "duly subpoenaed to appear ... before a court-martial"; "has been duly paid or tendered the fees and mileage of a witness at the rates allowed to witnesses at-

tending the courts of the United States; and ... willfully neglects or refuses to appear." Art. 47(a), 10 USC § 847(a). If, as in this case, no witness fees or mileage are tendered to the witness, the subpoena is unenforceable. Likewise, unless the appropriate fees and mileage have been tendered, the Government may not utilize a warrant of attachment to obtain the witness' presence in court. *See* RCM 703(e)(2)(G)(ii); *cf. United States v. Hinton*, 21 MJ 267 (CMA 1986). Thus, by refusing to fund the travel of the subpoenaed witness, Sharon Simpson, from her home in Kentucky to Hill Air Force Base, Utah, the convening authority thwarted the military judge's legitimate attempt to obtain relevant testimony in a post-trial Article 39(a) session.

 As the Uniform Code was originally enacted in 1950, Article 62 permitted a convening authority to direct reconsideration of a ruling by a law officer. *See United States v. Ware*, 1 MJ 282 (CMA 1976). However, the Code has been amended; and now a convening authority is not permitted to direct a military judge to reconsider his rulings. Instead, if a convening authority disagrees with the military judge's rulings, his only remedy is to direct trial counsel to move for reconsideration or to initiate a government appeal pursuant to the current provisions of Article 62. Pub.L. No. 98–209, § 5(c), 97 Stat. 1393, 1398 (1983).

 In this case, the convening authority negated a ruling of the military judge by declining to provide funds necessary to implement it. Although such conduct is not punishable as a contempt under Article 48, UCMJ, 10 USC § 848, we are convinced that a military judge is not helpless under such circumstances and that a convening authority may not flout the judge's authority with impunity. For example, if he has not authenticated the record of trial, the military judge may issue an order for the Government to show cause why the mili-

---

duce a substantially more favorable result for the accused.
 (3) *Fraud on court-martial.* No fraud on the court-martial warrants a new trial unless

it had a substantial contributing effect on a finding of guilty or the sentence adjudged.

tary judge should not set aside the findings of guilty and the sentence. Moreover, if the accused is serving a sentence to confinement, the military judge may order the accused's release until the motion for a new trial has been disposed of.

 Even though we conclude that, in this case, the convening authority—apparently on the basis of misadvice from his staff judge advocate—interfered with the post-trial Article 39(a) session directed by the military judge, we are not convinced that it is necessary at this time to set aside the findings of guilty. Instead, we conclude that a *DuBay*[4] hearing should be ordered, at which Ms. Simpson may testify. Although the recollection of witnesses may have grown dim by the passage of time, such a hearing will be a major step towards restoring the *status quo ante* and remedying any prejudice to appellant.

At the *DuBay* hearing, the subpoena power will be available to assure that Sharon Simpson and other relevant witnesses attend. The military judge will have an opportunity to determine on the basis of live testimony whether the evidence really was newly discovered, whether the defense exercised due diligence, and whether the new evidence would produce an acquittal. If the Government fails to provide the necessary travel funds or to take other appropriate action to procure the attendance of subpoenaed witnesses, the military judge can so report to this Court, which will then take appropriate action.

The Government has contended to us that the newly discovered evidence has been concocted by Scaff and by Sharon Simpson. If the military judge finds this to be true, then his findings can be considered by appropriate prosecutorial authorities in determining whether any charges for perjury should be filed.

### III

The record of trial is returned to the Judge Advocate General of the Air Force for referral to a convening authority for purposes of directing a hearing pursuant to *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967). Upon completing the hearing, the military judge shall return the record of trial, together with his findings and conclusions, to this Court for further review.[5]

Judges COX and SULLIVAN concur.

---

4. *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967).

5. In view of the relief we are granting in connection with our review of this case under Article 67(b)(3) of the Uniform Code, 10 USC § 867(b)(3), there is no occasion at this time to act on Scaff's petition for new trial pursuant to Article 73 of the Code, 10 USC § 873. The results of the *DuBay* hearing we are directing will undoubtedly determine our disposition of the petition for new trial.