UNITED STATES, Appellee,

v.

Sergeant Dathan O. CHISHOLM, United States Army, Appellant.

ARMY 9900240.

U.S. Army Court of Criminal Appeals.

24 Jan. 2003.

For Appellant: Major Imogene M. Jamison, JA; Captain Katherine A. Lehmann, JA (on brief).

For Appellee: Major Virginia G. Beakes, JA; USAR, Major Paul T. Cygnarowicz, JA (on brief).

Before CHAPMAN, Senior Judge, CARTER, and STOCKEL, Appellate Military Judges.

## OPINION OF THE COURT

CARTER, Judge:

A general court-martial composed of officer members convicted appellant, contrary to his pleas, of conspiracy to commit rape, conspiracy to obstruct justice, making a false official statement, and rape, in violation of Articles 81, 107, and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 907, and 920 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for four years, forfeiture of all pay and allowances, and reduction to Private E1. The case is before the court for review under Article 66, UCMJ, 10 U.S.C. § 866.

In his only assignment of error, appellant asserts that he is entitled to relief under *United States v. Collazo*, 53 M.J. 721 (Army Ct.Crim.App.2000), for dilatory post-trial processing. We agree. We also write to emphasize the responsibilities of the military judge in the timely preparation and authentication of the record of trial.

### Facts

Appellant entered pretrial confinement on 19 January 1999. Appellant's sentence was announced on 19 February 1999. On 17 June 1999, appellant submitted a request for deferment and waiver of forfeitures which the convening authority denied on 28 June 1999.

On or about 8 November 1999, trial defense counsel was notified that the tapes of appellant's court-martial had been sent from the 25th Infantry Division (25th ID), Hawaii, to Fort Irwin, California, for transcription. The Fort Irwin staff judge advocate (SJA) subsequently notified appellant's trial defense counsel on 9 November 1999 that "local business," including a guilty plea that had occurred that morning, had priority over appellant's case. In a memorandum to the 25th ID SJA, dated 18 November 1999, appellant's trial defense counsel requested that the completion of appellant's record be expedited and asked for a "date certain" for its completion, noting that appellant's original clemency review at the confinement facility had been scheduled for September 1999,[1] and appellant was scheduled to appear before the Army Clemency and Parole Board in May 2000. The memorandum also requested that the convening authority order a post-trial Article 39(a), UCMJ, session if the SJA did not establish, by 1 December 1999, a "date certain" for completion of the record. In a memorandum dated 1 December 1999, the 25th ID SJA stated that he could not provide a "date certain," but predicted that the record would be completed by mid-December 1999.

---

1. Army regulations provide that prisoners will not normally be considered for clemency or parole by penal authorities unless action on the court-martial has been taken by the convening authority. *See* Army Reg. 15–130, Boards, Commissions, and Committees: Army Clemency and Parole Board, para. 3–1c(3) (23 Oct. 1998). Based upon his four year sentence to confinement, appellant's case would have been considered for clemency within nine months after his confinement began. *Id.* at para. 3–1d(2).

By 5 January 2000, the record of trial still had not been completed. In a memorandum dated that day, trial defense counsel asked the convening authority to convene an Article 39(a), UCMJ, hearing to determine a completion date for the record of trial. Trial defense counsel provided a copy of this request to Judge Saynisch, who was one of the two detailed military judges in appellant's court-martial. The convening authority denied the request on 6 January 2000. Judge Saynisch then ordered the government to provide a daily status report concerning the completion of the record of trial. On 10 January 2000, the court reporter completed the record of trial and forwarded it to the trial counsel and defense counsel for review.

On 3 February 2000, almost one year after trial, and prior to the military judges' authentication of the record or appellant's receipt of the SJA's Rule for Courts–Martial [hereinafter R.C.M.] 1106 recommendation (SJAR), appellant's trial defense counsel submitted a R.C.M. 1105 clemency packet to the convening authority. In this submission, appellant: (1) noted that the record was still incomplete because it was missing more than twenty specific documents—including discovery requests and responses, motions, and court-martial convening orders; (2) requested immediate deferment of confinement, reduction, and forfeitures until action; and (3) requested clemency in the form of dismissal of the charges or, in the alternative, disapproval of the punitive discharge and reduction of the sentence to confinement to time served because of the excessive delay in the post-trial processing of his case. On 10 February 2000, the convening authority denied appellant's request for immediate deferment of confinement and stated that his action on the remaining portions of the sentence would be taken upon receipt of the SJAR and the authenticated record of trial.

On 23 February 2000, the record was forwarded to the two military judges for authentication. A memorandum for record, dated 13 April 2000, signed by the chief of military justice at 25th ID, explained the efforts taken to reconstruct most of the missing documents identified by the trial defense counsel on 3 February 2000. The 848–page record of trial was authenticated by the two military judges on 21 March and 10 May 2000.

On 19 and 24 April 2000, appellant's mother and wife wrote letters to the convening authority requesting the expeditious completion of appellant's record of trial and asserting that appellant's civil rights were being violated because he could not have a parole hearing without a record of trial. On 22 May 2000, the SJA, on behalf of the convening authority, replied to the letters and advised both women that the record had been completed and authenticated and would soon be served on appellant.

The SJAR, dated 22 May 2000, stated in part:

> The accused through his defense counsel has raised a claim of legal error in that he believes that there has been inordinate and unexplained post-trial delay in processing the record of trial. I disagree. While some of the delay has been attributable to a temporary shortage of court reporters[,] ... the delay was mainly due to the workload associated with transcribing this case and its companion cases.[2] ... The allegation of excessive delay is without merit.

In a second clemency submission, dated 4 June 2000, appellant: (1) again specifically complained about the undue delay in the

2. Of the six companion cases, three were guilty pleas with 107, 136, and 143 transcribed pages of record. *See United States v. Helton*, ARMY 9801099 (Army Ct.Crim.App. 28 May 1999) (unpub.); *United States v. Weatherford*, ARMY 9801553 (Army Ct.Crim.App. 31 Mar. 2000) (unpub.); and *United States v. Brown*, ARMY 9900234 (Army Ct.Crim.App. 31 May 2000) (unpub.). One was a mixed plea case that took over 400 days to take action on a 346–page record of trial, a delay for which this court granted a three month reduction in the twelve month approved sentence to confinement. *See United States v. Bradford*, ARMY 9900366 (Army Ct.Crim.App. 16 May 2001) (unpub.). The two other contested cases have 421 and 738 transcribed pages. *See United States v. Atwaters*, ARMY 9900187 (Army Ct.Crim.App. 18 Nov. 2002) (unpub.); *United States v. Conley*, ARMY 9900183 (Army Ct.Crim. App. 27 Nov. 2002) (unpub.) (granting a four month reduction in the ten year approved sentence due to a fifteen month delay from trial to action).

post-trial processing of his case; (2) stated that two documents were still missing from the record of trial, one of which he provided as an enclosure; and (3) noted that his first hearing before the Army Clemency and Parole Board, rescheduled from 19 April 2000 to 24 May 2000, was again postponed because the convening authority had not taken action in his case. This clemency submission included correspondence to members of Congress, in which appellant unsuccessfully sought assistance to have action taken on his court-martial. The SJAR addendum, dated 22 June 2000, did not readdress the untimely post-trial processing. Sixteen months after appellant's court-martial was completed, the convening authority took action on appellant's case on 23 June 2000, approving the sentence as adjudged.

### The Role of the Military Judge in Post–Trial Processing

Both Congress and the President have specifically tasked the military judge with the responsibility to direct the preparation of the record of trial. Congress declared that the trial counsel, **"under the direction of the court,"** shall be responsible for preparing the record of the proceedings of a general or special court-martial. UCMJ art. 38(a), 10 U.S.C. § 838(a) (emphasis added).[3] The President, acting under his authority in Article 36, UCMJ, 10 U.S.C. § 836, has also decreed that the trial counsel, **"[u]nder the direction of the military judge,"** shall cause the record to be prepared. R.C.M. 1103(b)(1)(A) (emphasis added);[4] *see also* R.C.M. 502(d)(5); *United States v. Dionne,* 6

M.J. 791, 793 (A.C.M.R.1978) ("the responsibility for **preparing** and authenticating the record of trial rests in the court itself") (citations omitted) (emphasis added).

■ In Army practice, however, supervisory responsibility for the preparation of records of trial is a shared responsibility between the SJA and the military judge. For many years, The Judge Advocate Generals of the Army have assigned court reporters to SJA offices to prepare records of trial under the supervision of the chief of military justice, who in turn works for the deputy SJA and the SJA.[5] We find no inherent conflict between this system of shared responsibility[6] and the requirements of Articles 38 and 54, UCMJ, 10 U.S.C. § 854, and R.C.M. 1103. Nevertheless, the detailed military judge[7] must be satisfied with the timeliness and accuracy of records of trial that he or she authenticates or direct appropriate corrective measures to remedy any deficiencies.

■ "A court-martial is a temporary court, [created by a convening order,] and dissolved when its purpose is accomplished." *United States v. Weiss,* 36 M.J. 224, 228 (C.M.A. 1992), *aff'd,* 510 U.S. 163, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994). Once detailed to a court-martial, a military judge's statutory and regulatory trial responsibilities continue until he completes his "directing" of the preparation of the record of trial and authenticates it. UCMJ arts. 38 and 54; R.C.M. 1103. Implicit within the detailed military judge's explicit responsibility to "direct" the preparation of the record of trial is the inherent

---

3. The UCMJ mandates that (1) a "complete record of the proceedings and testimony" shall be made of courts-martial in which either a punitive discharge or a sentence in excess of that authorized by a special court-martial is adjudged; (2) the "record shall be authenticated by the signature of the military judge"; and (3) the record "shall be given to the accused as soon as it is authenticated." UCMJ art. 54.

4. In federal criminal trials in U.S. District Courts, the court reporter, also working under the supervision of the court, is responsible both for preparing the record of trial and certifying its accuracy. *See* 28 U.S.C. § 753.

5. *See, e.g.,* U.S. Dept. of Army, Field Manual 27–100, Legal Support to Operations § 2.1.7 (1 Mar. 2000).

6. There are other areas of shared responsibility in our military justice system. *See, e.g., United States v. Hargrove,* 50 M.J. 665, 669 (Army Ct. Crim.App.1999) (noting that, "[a]s a matter of comity, [this court] should avoid, whenever possible, limiting, expanding, or otherwise disturbing the Secretary's exercise of his [UCMJ post-trial authority]"); *McKinney v. Ivany,* 48 M.J. 908, 909 (Army Ct.Crim.App.1998) (discussing shared UCMJ responsibilities in the Army between this court and The Judge Advocate General).

7. See Article 26, UCMJ, 10 U.S.C. § 826, and R.C.M. 503(b) for rules concerning detailing of military judges.

authority to issue such reasonable orders as may be necessary to enforce that legal duty. *See Weiss,* 36 M.J. at 228 (cited with approval, *Weiss,* 510 U.S. at 175, 114 S.Ct. 752). "[W]e are convinced that a military judge is not helpless under such circumstances and that a convening authority [or a SJA] may not flout the judge's authority with impunity." *United States v. Scaff,* 29 M.J. 60, 66 (C.M.A.1989).

 Additionally, a military judge's order "directing" completion of the record or other specified action is, in essence, an "interlocutory question arising during the [post-trial] proceedings"[8] and, as such, the order is final and binding on the SJA and the convening authority. *See* UCMJ art. 51(b), 10 U.S.C. § 851; *United States v. Nivens,* 21 U.S.C.M.A. 420, 45 C.M.R. 194, 1972 WL 14152 (1972) (holding that the convening authority unlawfully overruled the military judge's decision on a change of venue motion, an interlocutory matter, in violation of Article 51(b), UCMJ). After a convening authority refers a case to trial, he has no authority to control or interfere with the military judge's exercise of his statutory duties. *See United States v. Knudson,* 4 U.S.C.M.A. 587, 16 C.M.R. 161, 165–68, 1954 WL 2439 (1954).[9]

Military case law confirms the military judge's authority to take appropriate remedial action to enforce lawful judicial orders. In *Scaff,* the court held that the military judge was empowered to order the government to show cause why he should not set aside the findings and sentence after the convening authority had flouted the judge's order by refusing to fund travel for a court-ordered witness at a post-trial session ordered by the military judge prior to authentication of the

record. 29 M.J. at 60. The court specifically stated that if a convening authority (or a SJA) is dissatisfied with a military judge's order, the only remedy is to have the trial counsel move for reconsideration or to initiate an appeal to this court under Article 62, UCMJ, 10 U.S.C. § 862, if applicable. *Id.* at 66. "Moreover, if the accused is serving a sentence to confinement, the military judge may order the accused's release" from confinement until the government complies with the court's order. *Id.* at 67. In short, the military judge may take whatever "action after trial and before authenticating the record as may be required in the interest of justice." *Id.* at 65.[10]

In *United States v. Nelson,* 46 M.J. 764, 766 (A.F.Ct.Crim.App.1997), *aff'd,* 49 M.J. 147 (1998), the court held that a military judge has jurisdiction, before authentication, to hear and rule on an accused's motion for appropriate relief because of undue delay in completing the record of trial. In the *Nelson* case, rather than convene a post-trial session under R.C.M. 1102, the military judge issued written orders directing the government to report the status of appellant's case daily and to show cause why he should not dismiss the case. The government quickly completed the record of trial, and the military judge ultimately ruled that no relief was warranted.

 Military judges, as empowered by Congress and the President, have both a duty and a responsibility to take active roles in "directing" the timely and accurate completion of court-martial proceedings. In most cases, if a military judge has not received a record of trial within 90–120 days after adjournment, he should sua sponte make documented inquires as to the progress

---

8. An interlocutory matter is "[s]omething intervening between the commencement and the end of a suit which decides some point or matter, but is not a final decision of the whole controversy." *Black's Law Dictionary* 815 (6th ed.1990).

9. A convening authority may, however, withdraw charges from a court-martial before findings are announced and refer those charges to another court-martial subject to the conditions in R.C.M. 604.

10. Citing *United States v. Griffith,* 27 M.J. 42 (C.M.A.1988) (holding that a military judge could

grant a motion for a finding of not guilty, after adjournment but prior to authentication, if the evidence was legally insufficient); *United States v. Brickey,* 16 M.J. 258 (C.M.A.1983) (holding that a military judge had authority to hold a post-trial session, prior to authentication, to determine whether trial counsel had violated his constitutional duty to disclose exculpatory evidence); and *United States v. Witherspoon,* 16 M.J. 252 (C.M.A.1983) (noting that a military judge had authority to convene a post-trial session, prior to authentication, to consider possible jury misconduct).

of the record preparation and the projected completion thereof. How a particular military judge "directs" the completion of a given record is a matter within his or her broad discretion and inherent authority. However, military judges must "cooperat[e] closely" with SJAs and "exercise every legitimate and appropriate effort to assist convening authorities in the expeditious handling of court-martial cases [to include preparation of records of trial], while taking care to avoid any act that may be a usurpation of the powers, duties, or prerogatives of a convening authority or the convening authority's staff," especially the SJA. Army Reg. 27–10, Legal Services: Military Justice, para. 8–4d(3) (6 Sept. 2002).

■ Similarly, SJAs must fully cooperate with military judges to accomplish the timely preparation of records of trial.[11] Our opinion in this case is not an excuse for SJAs to abrogate their own supervisory responsibilities over trial counsel and court reporters. The Secretary of the Army has tasked SJAs to "balance the needs of good order and discipline in the command and the rights of the accused to ensure justice is done **in every case** ... [and to] ensure that military justice is administered **fairly**." Army Reg. 27–1, Legal Services: Judge Advocate Legal Services, para. 5–2c (30 Sept. 1996) (emphasis added). An SJA's responsibility to secure justice and fairness in every case includes

ensuring that every soldier receives "a fair, impartial, and timely trial, to include the post-trial processing of his case." *Collazo,* 53 M.J. at 725; *see also United States v. Tardif,* 57 M.J. 219, 224–25 (2002) (agreeing that sentence relief may be warranted for excessive and unexplained post-trial delay without a showing of "actual prejudice" if appropriate under the circumstances).

■ After adjournment, but prior to authentication of the record of trial, the military judge must ensure that the government is proceeding with due diligence to complete the record of trial as expeditiously as possible, given the totality of the circumstances of that accused's case. *See Collazo,* 53 M.J. at 727; UCMJ arts. 38 and 54; R.C.M. 1103. If the military judge determines that the record preparation is proceeding too slowly, he may take remedial action without awaiting an order from this court. *See Griffith,* 27 M.J. at 47. The exact nature of the remedial action is within the sound judgment and broad discretion of the military judge, but could include, among other things: (1) directing a date certain for completion of the record[12] with confinement credit or other progressive sentence relief for each day the record completion is late;[13] (2) ordering the accused's release from confinement until the record of trial is completed and authenticated;[14] or, (3) if all else fails, and the accused has been prejudiced by the delay,[15] setting

---

11. Many SJAs receive reports from their chief of military justice or lead court reporter concerning the status of pending records of trial. Sharing the pertinent portions of that data with the detailed military judges would enhance such cooperation.

12. A military judge would be within his statutory and regulatory authority to use all means at his or her disposal to "direct" the completion of the record of trial including, but not limited to, setting a due date for the record's completion before adjourning the court, or monitoring the progress of the record's completion by electronic mail, telephone conference calls, docket calls, written orders, R.C.M. 802 conferences, or post-trial Article 39(a), UCMJ, sessions under R.C.M. 1102(b)(2). Such communications between the detailed military judge and the government normally would be routine or purely administrative in nature until the judge had to issue a judicial order or call a post-trial Article 39(a), UCMJ, session to address the issue.

13. *See generally Tardif,* 57 M.J. at 224; *Brickey,* 16 M.J. at 264 (stating that it is in the interest of justice that corrective action be taken as promptly as possible); *United States v. Mahoney,* 36 M.J. 679 (A.F.C.M.R.1992), *aff'd sub nom. United States v. Tilghman,* 44 M.J. 493 (1996) (upholding judge's remedial action when commander placed accused in confinement after findings but before sentencing in violation of the judge's order).

14. *See Scaff,* 29 M.J. at 67.

15. [B]efore ordering a dismissal of the charges because of post-trial delay there must be some error in the proceedings which requires that a rehearing be held and that because of the delay appellant would be either prejudiced in the presentation of his case at a rehearing or that no useful purpose would otherwise be served by continuing the proceedings.
*United States v. Gray,* 22 U.S.C.M.A. 443, 445, 47 C.M.R. 484, 486, 1973 WL 14764 (1973), quoted with approval in *Tardif,* 57 M.J. at 224–25.

aside the findings and the sentence with or without prejudice as to a rehearing.[16] Staff judge advocates and convening authorities who disregard such remedial orders do so at their peril.[17]

### Post-trial Processing in Appellant's Case

 We applaud appellant's trial defense counsel for his persistent efforts in this case to get a completed record of trial and action for his client.[18] By November 1999, both of the original court-reporters had left the Army, and the trial counsel had been reassigned to another installation. Trial defense counsel frequently answered questions for the transcribing reporter who was having difficulty interpreting the tapes. However, the trial defense counsel should have applied sooner to one of the detailed military judges for assistance in getting the record completed.

Six companion cases, totaling less than 1900 transcribed pages, without greater explanation, do not excuse or justify the sixteen-month delay from trial to action in appellant's case. Considering the totality of the circumstances in appellant's case, the sixteen-month delay from trial to action was unexplained and excessive, and warrants sentence relief. *Collazo,* 53 M.J. at 727; *see also Tardif,* 57 M.J. at 224–25.

Appellant was one of seven coaccused convicted of offenses stemming from the rape of Private (PV2) S while she was passed out drunk in a military barracks room. In all, six soldiers were convicted of raping the unconscious PV2 S during the early morning hours of 16 May 1998. Appellant was the only noncommissioned officer among these seven offenders and should have stopped the

assaults immediately upon encountering the first rape by Specialist Helton. Instead, appellant exhorted another junior soldier to "do it" to PV2 S while appellant watched. Appellant received one of the most lenient sentences, despite the fact that he could have stopped this series of rapes after the first assault. But for these factors, we would have granted even more sentence relief.

### Decision

We have considered the matters personally asserted by appellant under *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for forty-five months, forfeiture of all pay and allowances, and reduction to Private E1.

Senior Judge CHAPMAN and Judge STOCKEL concur.

16. *See Scaff,* 29 M.J. at 65; *United States v. Shely,* 16 M.J. 431, 433 (C.M.A.1983) (dismissal may be an appropriate remedy if an accused is prejudiced by post-trial processing that "is marked by administrative bungling and indifference").

17. See Article 98, UCMJ, 10 U.S.C. § 898:
**Art. 98. Noncompliance with procedural rules**
Any person subject to this chapter who—
(1) is responsible for unnecessary delay in the disposition of any case of a person accused of an offense under this chapter; or

(2) knowingly and intentionally fails to enforce or comply with any provision of this chapter regulating the proceedings before, during, or after trial of an accused; shall be punished as a court-martial may direct.

18. See *United States v. Maxwell,* 56 M.J. 928, 929 (Army Ct.Crim.App.2002), for a discussion of the obligations on trial defense counsel to ensure that an accused's case is timely processed in the post-trial phase.