UNITED STATES, Appellant

v.

Demond WEBB, Staff Sergeant
U.S. Air Force, Appellee

No. 07-5003

CCA Misc. Dkt. No. 2007-01

United States Court of Appeals for the Armed Forces

Argued December 10, 2007

Decided March 3, 2008

STUCKY, J., delivered the opinion of the Court, in which EFFRON, C.J., and BAKER, ERDMANN, and RYAN, JJ., joined.


<u>Counsel</u>


For Appellant:  Major Donna S. Rueppell (argued); Colonel Gerald R. Bruce and Major Matthew S. Ward (on brief).

For Appellee:  Captain Timothy M. Cox (argued); Lieutenant Colonel Mark R. Strickland (on brief).


Military Judge:  Nancy J. Paul


<u>**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**</u>

Judge STUCKY delivered the opinion of the Court.

The Judge Advocate General of the Air Force certified two issues to this Court under Article 67(a)(2), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 867(a)(2) (2000). The certification asks this Court to determine whether, before authentication of the record, the military judge had authority to order a new trial for a discovery violation and whether the military judge abused her discretion exercising that authority in this case. We find that the military judge had the authority to order a new trial and that she did not abuse her discretion in doing so.

I.

Appellee consented to a urinalysis after being involved in a fuel spill mishap at his duty section. After consenting to provide a urine specimen for testing, Appellee reported to the testing site. Technical Sergeant (TSgt) Andrew Herring, the assigned observer, directly witnessed Appellee provide a specimen. Appellee's urine tested positive for a metabolite of cocaine. The Government charged Appellee with a single use of cocaine based on the results of the urinalysis. Article 112a, UCMJ, 10 U.S.C. § 912a (2000).

On May 4, 2006, Appellee's defense counsel requested discovery of any evidence that would affect a witness's credibility, including prior disciplinary actions under Article

2

15, UCMJ, 10 U.S.C. § 815 (2000). In late September or early October 2006, trial counsel interviewed TSgt Herring. TSgt Herring told the trial counsel that he had been punished under Article 15, UCMJ. Trial counsel did not ask the basis for the Article 15, UCMJ, nor did he disclose the existence of the Article 15, UCMJ, to defense counsel.

On November 28, 2006, only seven days before trial was to begin, the trial counsel directed the Noncommissioned Officer in Charge (NCOIC) of the Military Justice Section to request any derogatory data regarding the witnesses from the Air Force Personnel Center. The NCOIC did so the same day, but neither he nor trial counsel followed up on the request.

Appellee's court-martial began on December 5, 2006. Appellee pled not guilty and denied using cocaine. To establish part of the chain of custody of the urine specimen, the Government offered a stipulation of expected testimony from TSgt Herring, the person who observed Appellee provide the urine specimen. Ultimately, a general court-martial, consisting of members, convicted Appellee of using cocaine and, on December 7, 2006, sentenced him to a bad-conduct discharge, confinement for three months, forfeiture of all pay and allowances, and reduction to E-1.

On December 13, 2006, the NCOIC received a response to the derogatory data request, showing that TSgt Herring had been

3

punished for making a false official statement, making a false claim, and larceny. Under installation regulations, TSgt Herring's disciplinary history would have disqualified him from acting as a urinalysis observer. TSgt Herring had not disclosed his prior Article 15, UCMJ, punishment on any of the many occasions he acted as an observer, even after signing briefing sheets acknowledging his understanding that such would disqualify him. Trial counsel disclosed the Article 15, UCMJ, to the defense counsel the following day.

On January 5, 2007, before the military judge authenticated the record of trial, Appellee moved for a post-trial hearing, Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2000), and a new trial, arguing that the Government violated his due process rights by failing to disclose TSgt Herring's nonjudicial punishment. Appellee asserted that he could have used this evidence to impeach TSgt Herring's credibility, and the Government's failure to disclose the prior punishment prevented him from presenting a full defense in this "naked" urinalysis case.[1]

The military judge granted Appellee's motion for the post-trial hearing and for a new trial. The Government appealed under Article 62, UCMJ, 10 U.S.C. § 862 (2000). United States v. Webb, Misc. Dkt. No. 2007-01 (A.F. Ct. Crim. App. May 10,

2007). At the Air Force Court of Criminal Appeals, the Government challenged both the authority of the military judge to order a new trial and her ultimate decision to grant a new trial. Id. at 3. The Government claimed that Rule for Courts-Martial (R.C.M.) 1210(a) permits a new trial only after the convening authority approves findings and sentence. Id. Relying on United States v. Meghdadi, 60 M.J. 438 (C.A.A.F. 2005), the Air Force Court held that the military judge had authority to consider the request for a new trial. Id. The court also found the military judge did not abuse her discretion in ordering a new trial. Id. at 4. After the Air Force Court denied a Motion for Reconsideration and Reconsideration En Banc, the Judge Advocate General of the Air Force certified the issues to this Court on July 17, 2007.

II.

The Government argues that the military judge had no authority to order a new trial under the plain language of Article 73, UCMJ, 10 U.S.C. § 873 (2000), and R.C.M. 1210. Article 73, UCMJ, reads:

> At any time within two years after approval by the convening authority of a court-martial sentence, the accused may petition the Judge Advocate General for a new trial on the grounds of newly discovered evidence or fraud on the

---

[1] A court-martial for drug use based solely on positive results of a urinalysis test, without any other evidence of illegal drug use, has become known as a "naked" urinalysis case.

5

> court. If the accused's case is pending before a
> Court of Criminal Appeals or before the Court of
> Appeals for the Armed Forces, the Judge Advocate
> General shall refer the petition to the
> appropriate court for action. Otherwise the
> Judge Advocate General shall act upon the
> petition.

R.C.M 1210(a) mirrors the language of the statute and provides implementing guidance. The Government asserts that the language of the statute limits new trial petitions to a specific period -- the two years after the convening authority's action. According to the Government, a petition was not authorized in this case because the convening authority has not acted, and the military judge had no authority to order one.

We faced an analogous situation in United States v. Scaff, 29 M.J. 60 (C.M.A. 1989). Therein, we noted that Article 39(a), UCMJ, authorized military judges "to take such action after trial and before authenticating the record as may be required in the interest of justice." Id. at 65 (citing United States v. Griffith, 27 M.J. 42 (C.M.A. 1988) (holding that the military judge could grant a motion for a finding of not guilty after conclusion of trial if he concluded the evidence was legally insufficient); United States v. Brickey, 16 M.J. 258 (C.M.A. 1983); United States v. Witherspoon, 16 M.J. 252 (C.M.A. 1983)). "[U]ntil the military judge authenticates the record of trial, he may conduct a post-trial session to consider newly discovered

evidence and, in proper cases, may set aside findings of guilty and the sentence." Id.

The Government argues that the language from Scaff is dictum, and that we have not held that a military judge has the authority to order a new trial under Article 73, UCMJ. We agree that a military judge does not have authority under Article 73, UCMJ, to order a new trial. But that is not what happened in this case. The military judge ordered a new trial under her Article 39(a), UCMJ, authority to resolve matters that arise after trial that "substantially affect the legal sufficiency of any findings of guilty," R.C.M. 1102(b)(2), based on the post-trial discovery of the trial counsel's failure to provide the defense with evidence that could have been used to impeach TSgt Herring. Her actions were consistent with the language in both Scaff and Meghdadi. In Meghdadi, for example, this Court held that a military judge erred in denying a request for a post-trial Article 39(a), UCMJ, session to consider whether to order a new trial. 60 M.J. at 439. In doing so, this Court found that Scaff had "removed any substantive distinction between a military judge's authority to consider post-trial issues under R.C.M. 1102(b)(2) and R.C.M. 1210(f)." Id. at 441. If it was impossible for the military judge in Meghdadi to order a new trial, we would not have held he erred by refusing to hold an Article 39(a), UCMJ, session to consider doing so. See id.

7

We confirm our conclusion in Scaff. Prior to authentication, a military judge has authority under Article 39(a), UCMJ, "to convene a post-trial session to consider newly discovered evidence and to take whatever remedial action is appropriate." Scaff, 29 M.J. at 66.

### III.

Having concluded that the military judge had the authority to order a new trial as a remedial action under Article 39(a), UCMJ, and R.C.M. 1102(b)(2), we must determine whether she abused her discretion in doing so. We hold that she did not.

The Due Process Clause of the Fifth Amendment guarantees that "criminal defendants be afforded a meaningful opportunity to present a complete defense." California v. Trombetta, 467 U.S. 479, 485 (1984) (holding the Due Process Clause of the Fourteenth Amendment requires criminal prosecutions to comply with notions of fundamental fairness); United States v. Mahoney, 58 M.J. 346, 349 (C.A.A.F. 2003). That guarantee requires the prosecution to disclose to the defense "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). The Supreme Court has defined "favorable evidence" to include "Impeachment evidence . . . that, if disclosed and used effectively, it may make the difference between conviction and

8

acquittal." United States v. Bagley, 473 U.S. 667, 676 (1985) (citations omitted).

> However, like other forms of exculpatory evidence, impeachment evidence is "material" to guilt or punishment "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 682. Under the "reasonable probability" standard of materiality, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial." Kyles[ v. Whitley], 514 U.S. [419, 434 (1995)]. Therefore, "[a] 'reasonable probability' of a different result is . . . shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" Id. (quoting Bagley, 473 U.S. at 678). Failing to disclose such evidence is a due process violation "irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87.

Mahoney, 58 M.J. at 349. In cases such as this, where the defense requested any undisclosed impeachment evidence, this Court requires the government to show that nondisclosure is harmless beyond a reasonable doubt. United States v. Roberts, 59 M.J. 323, 327 (C.A.A.F. 2004).

In military practice, the "trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." Article 46, UCMJ, 10 U.S.C. § 846 (2000). Subject to exceptions not applicable to this case and, upon request of the defense, the trial counsel must permit the defense to inspect any documents within the

custody, or control of military authorities that are "material to the preparation of the defense." R.C.M. 701(a)(2)(A). Thus, an accused's right to discovery is not limited to evidence that would be known to be admissible at trial. It includes materials that would assist the defense in formulating a defense strategy. See Roberts, 59 M.J. at 325.

We review the military judge's decision to order a new trial for an abuse of discretion. United States v. Johnson, 61 M.J. 195, 199 (C.A.A.F. 2005) (citing United States v. Humpherys, 57 M.J. 83, 96 (C.A.A.F. 2002)). A military judge abuses her discretion when her findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law. See United States v. Gore, 60 M.J. 178, 187 (C.A.A.F. 2004) (citing United States v. Sullivan, 42 M.J. 360, 363 (C.A.A.F. 1995); United States v. Wallace, 964 F.2d 1214, 1217 n.3 (D.C. Cir. 1992)).

To convict of wrongful use of cocaine under Article 112a, UCMJ, the Government must prove the accused used that controlled substance and that the use was wrongful. Manual for Courts-Martial, United States (MCM) pt. IV, para. 37.b.(2) (2005 ed.). "Knowledge of the presence of the controlled substance is a required component of [wrongful] use." Id. at para. 37.c.(10).

10

When there is evidence that the accused's body contained a controlled substance, the factfinder may infer that the accused used the substance knowingly.  Id.  If the evidence that the accused's body contains a controlled substance is based solely upon a urinalysis, the court must be convinced the urine specimen that was tested was the accused's.  Fungible evidence, such as urine specimens, generally "'becomes admissible and material through a showing of continuous custody which preserves the evidence in an unaltered state.'"  United States v. Gonzales, 37 M.J. 456, 457 (C.M.A. 1993) (quoting United States v. Nault, 4 M.J. 318, 319 (C.M.A. 1978)).

Evidence that the observer, a link in the chain of custody, had been punished for dishonesty may have raised serious questions in the minds of the court members concerning the identity of the urine tested and whether it was unaltered when it was tested.  This point may have borne extra weight with the members in light of the Government's own express prohibition on having such persons serve as observers.  Alone or in conjunction with Appellee's denial of use, this evidence may have raised reasonable doubt in the members' minds as to Appellee's guilt.  See, e.g., United States v. Sztuka, 43 M.J. 261 (C.A.A.F. 1995) (concluding new evidence that the appellant's husband may have spiked her food with marijuana was a sufficient basis to require a new trial).  Furthermore, the possession of this evidence may

have altered Appellee's trial strategy -- he may not have testified.

Under all the circumstances of this case, we cannot fault the military judge for concluding that it was probable that had the prosecution provided the nonjudicial punishment to the defense, it would have produced a substantially more favorable result for Appellee -- in other words, it undermined confidence in the outcome of the trial. In this case, the Government's failure to disclose exculpatory evidence that Appellee specifically asked the Government to disclose was not harmless beyond a reasonable doubt. Roberts, 59 M.J. at 327. We hold that the military judge did not abuse her discretion in ordering a new trial. Her decision to grant a new trial was well within the range of choices from the applicable facts and law, and her use of guidance found in Article 73, UCMJ, and R.C.M. 1210(f), to make her decision to order a new trial under Article 39(a), UCMJ, was not an erroneous application of the law.

                            IV.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.