# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

**UNITED STATES**

**v.**

**Lieutenant Colonel MICHAEL J.D. BRIGGS**
**United States Air Force**

**ACM 38730**

**23 June 2016**

Sentence adjudged 7 August 2014 by GCM convened at Spangdahlem Air Base, Germany. Military Judge: Dawn R. Eflein (arraignment) and Donald R. Eller, Jr. (sitting alone).

Approved Sentence: Dismissal, confinement for 5 months, and a reprimand.

Appellate Counsel for the Appellant: Terri R. Zimmerman (civilian counsel) (argued); Jack B. Zimmerman (civilian counsel); Captain Johnathan D. Legg.

Appellate Counsel for the United States: Major Jeremy D. Gehman (argued); Colonel Katherine E. Oler; Major Mary Ellen Payne; and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and MAYBERRY
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under Rule of Practice and Procedure 18.4.

MAYBERRY, Judge:

At a general court-martial composed of a judge alone, Appellant was convicted, contrary to his plea, of rape in violation of Article 120, UCMJ, 10 U.S.C. § 920.[1] The court

---

[1] Because the offense occurred in 2005, Appellant was charged with a violation of Article 120, UCMJ, 10 U.S.C. § 920, for offenses committed prior to 1 October 2017. *Manual for Courts-Martial, United States*, app. 27 at A27-1 (2012 ed.).

sentenced Appellant to a dismissal, confinement for 5 months, and a reprimand. The convening authority approved the sentence as adjudged.

On appeal, Appellant raises four issues: (1) his trial defense counsel provided ineffective assistance of counsel, (2) the military judge erred in failing to disclose all of SSgt DK's mental health records, (3) the convening authority erred by denying a request for rehearing, and (4) the evidence is factually insufficient.

*Background*

In 2005, Appellant was a Captain stationed at Luke Air Force Base (AFB) as an F-16 instructor pilot and DK was an A1C also assigned at Luke AFB in aircrew life-support. In May of 2005, both of them, along with other members from Luke, went TDY to Mountain Home AFB for a two-week exercise. According to SSgt DK they had never engaged in sexual contact prior to the rape. Appellant testified they had two consensual sexual encounters. The event that gives rise to the charge occurred during the last few days of the TDY.

SSgt DK did not formally report the incident until 3 July 2013, when she was a SSgt stationed at RAF Lakenheath and Appellant was a Lieutenant Colonel (Lt Col) stationed at Spangdahlem Air Base. During the intervening eight years, SSgt DK had "reported" a sexual encounter without naming Appellant to five individuals. Of those individuals, her mother and one other witness testified that she characterized it as rape. On 12 July 2013, SSgt DK participated in a pretext phone call with Appellant. The call lasted approximately 20 minutes. The relevant portions of the phone call follows:

> [Appellant]: Lieutenant Colonel Briggs.
>
> [SSgt DK]: Hi, this is Sergeant [K]. Actually, you probably remember me as Airman [W] from when we were stationed at Luke together.
>
> [Appellant]: Yes.
>
> [SSgt DK]: I was wondering if I could have a few minutes of your time to talk to you about something.
>
> [Appellant]: Sure.
>
> [SSgt DK]: Um, I wanted to talk to you about when we were TDY to Mountain Home together.
>
> [Appellant]: Yeah.

[SSgt DK]: I've been going to counseling for a while. Um, my counselor thought that it would be a good idea if I could call you to get closure for what happened the last night—

[Appellant]: Okay.

[SSgt DK]: —of our TDY.

[Appellant]: Sure.

[SSgt DK]: I wanted to know why you had sex with me when I was so drunk?

[Appellant]: Well, I was pretty drunk as well. That's not an excuse. Um, you know, we were both really into each other. Um, I don't know if there was any, you know, off-duty stress in my life or whatever. I'm sure there was, but that's not an excuse either. I've thought about that a lot, um, over the years at various functions or various, you know, training or whatever. Um, you know,—yeah, so we were both really drunk. I think you were much more drunk than I was. And, um, I think neither one of us—you know, in hindsight neither one of us wanted that to happen. Um, that night it seemed like both of us wanted it to happen. Um, neither one of us—I mean, both of us were coherent throughout the whole evening and then it was—I mean, the next day it was, um, you know, a tremendous amount of regret, um, remorse. "Oh, my God, what happened? How did I do this?" Um, and I'm—and that was from my state of drunkenness. From yours I don't know what happened. I assume you passed out after—afterwards. But, you know, I have relived that decision-making and how did we—how did it get to that point. And, um, I never—I blame myself certainly, um, just based on my position, you know, and being less drunk than you were. Um, it's not like I didn't know what was happening. Uh, I honestly—I honestly don't think that—um, I honestly don't think that—I honestly don't think that we did anything that right at that moment we didn't want to do. Certainly afterwards neither one of us wanted to have done that. Certainly we both regret that. Um, and, you know, our—obviously I haven't had any contact with you since, but I can only imagine that it has affected you in a way as it has affected me, um, in different ways for each of the

two of us. Um, it was definitely a turning point or definitely a significant point, but, um, —and it is something I've learned a lot from, but when you asked me why did it happen or why did I do that I didn't— um, I didn't make the—I didn't make the determination that neither one of us were in our right mind to make decisions and I wasn't really thinking about that.

[SSgt DK]: I told you "no". I said to "stop". I tried to roll away from you and you pulled me back. Why?

[Appellant]: [No response].

[SSgt DK]: Why didn't you just quit? You knew how drunk I was.

[Appellant]: I did. I did. I mean, we could hardly stand when we were getting checked at the front gate. I did.

[SSgt DK]: Why didn't you just—

[Appellant]: Um.

[SSgt DK]: —let [E] take me back to my room? Why did you come with?

[Appellant]: I did. She did take you back to your room. I went back to mine and then I came back over. Um, yeah, we went into each of our buildings or whatever and then after I got to my room and I assume you had gotten to yours that's when I came back over. I think I was—um, well, I was young and immature and, um, younger—um, younger and immature and, um, had a—didn't have an appreciation for, uh, everyone as human beings or everyone as—um, I guess—I don't know. I didn't—I didn't respect people in the way that I should have. I didn't respect everyone as individuals and equals as I should have. Um, you know, I think I told you this, you know, in the week or two before that you're like a little sister. I was really fond of you; really into you. I think that was obvious. I didn't—and, uh, maybe I used your—you know, your—how you reacted to me when we were, you know, sober when we were at work, when we were not drunk, um, as like what you really, really wanted instead of listening to you when I needed to; when I should have, and doing the responsible and

appropriate thing, which would have been probably just not even to go over to your room, you know, in the first place. . . .

But it certainly—I mean, I'm sorry.

[SSgt DK]: I bled for days afterwards. I couldn't sit down. I was so bruised and swollen. What—

[Appellant]: Oh, my God.

[SSgt DK]: What did you do to me?

[Appellant]: I—I don't know what to say. I didn't—I didn't know you were—I didn't know you were physically hurt like that. I didn't know. I mean, not no idea; I have no idea. Um—

[SSgt DK]: I told you it hurt. I tried to get away from you. I told you to stop. Why didn't you listen to me?

[Appellant]: Um—

[SSgt DK]: Why didn't you stop?

[Appellant]: I didn't—

[SSgt DK]: Did you use a condom?

[Appellant]: Yeah.

[SSgt DK]: I want—I need to hear you apologize for what you did.

[Appellant]: I am so, so sorry for being selfish, for disrespecting you, for not listening to you, for not being your—not just your friend, but not being professional and being a human being when you needed it. I'm so sorry for pushing myself on you; for putting my selfish, distorted needs and subjecting you to that; for not respecting you as a person and listening to you and stopping.

[SSgt DK]: You raped me. You destroyed me. For eight years, I have had to live with this by myself. I can't talk about it; I can't tell anybody. You took everything from me. Why?

[Appellant]: I didn't know the repercussions and even if I did I wasn't—I was selfish. I was—

[SSgt DK]: I need to hear you say you are sorry for raping me.

[Appellant]: I am sorry. I have been sorry. I will always be sorry for raping you.

[SSgt DK]: Thank you.

[Appellant]: If there is anything I could do or can do—if there is any way I can make amends or help you heal or ease your suffering or pain, either let me know or have someone let me know, or whatever.

[SSgt DK]: Just hearing you admit it and say that you did it is enough for right now. Thank you. I—I have to go now.

[Appellant]: Okay.

[SSgt DK]: Bye.

Additional facts necessary to resolve Appellant's assignments of error are provided below.

*Ineffective Assistance of Counsel*

In reviewing claims of ineffective assistance of counsel, we look at the questions of deficient performance and prejudice de novo. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012); *United States v. Gutierrez*, 66 M.J. 329, 330–31 (C.A.A.F. 2008).

To establish ineffective assistance of counsel, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Under the first prong, the appellant has the burden to show that his "counsel's performance fell below an objective standard of reasonableness—that counsel was not functioning as counsel within the meaning of the Sixth Amendment." *United States v. Edmond*, 63 M.J. 343, 351 (C.A.A.F. 2006) (quoting *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005)). The question is therefore did "the level of advocacy 'fall[] measurably below the performance . . . [ordinarily expected] of fallible lawyers?'" *United States v. Haney*, 64 M.J. 101, 106 (C.A.A.F. 2006) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)) (alterations in original). Under the

second prong, the deficient performance must prejudice the accused through errors "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (quoting *Strickland*, 466 U.S. at 687). Counsel is presumed competent until proven otherwise. *Strickland*, 466 U.S. at 689.

Trial defense counsel's strategy was to show that SSgt DK "had a regrettable sexual experience with a married officer who was a jerk and after eight years she reconstructed her memory of the event through the lens of Sexual Assault Prevention and Response (SAPR) training, guilt, and emotional instability." As a tactical choice, trial defense counsel decided not to try to portray SSgt DK as a liar. This strategy was largely driven by the fact that Appellant's statements during the pretext phone call essentially corroborated every aspect of the sexual encounter except for the issue of consent.

Appellant asserts trial defense counsel's decision not to introduce evidence of Appellant's character for truthfulness and non-violence as well as evidence of SSgt DK's character for untruthfulness constituted ineffective assistance of counsel. While appellate counsel may have chosen a different strategy, it does not mean that the strategy used at trial was not reasonable. Trial defense counsel did interview potential character witnesses and made the decision that attacking SSgt DK did not provide them with the best strategy to win. "Defense counsel do not perform deficiently when they make a strategic decision to accept a risk or forego a potential benefit, where it is objectively reasonable to do so." *Datavs*, 71 M.J. at 424 (citing *United States v. Gooch*, 69 M.J. 353, 362–63 (C.A.A.F. 2011)).

Appellant also alleges his trial defense counsel were ineffective by failing to file a motion to exclude the evidence obtained from his government computer or failing to object to its admission.

Mil. R. Evid. 314(d) states:

> Government property may be searched under this rule *unless* the person to whom the property is issued or assigned has a reasonable expectation of privacy therein at the time of the search. Under normal circumstances, a person does not have a reasonable expectation of privacy in government property that is not issued for personal use. . . .

(Emphasis added.) The analysis to this rule recognizes that the presumption that there is no reasonable expectation of privacy in government property is rebuttable. *Manual for Courts-Martial, United States,* app. 22 at A22-26 (2012 ed.).

Whether there is a reasonable expectation of privacy in government property is determined under the totality of the circumstances, which includes the rebuttable

presumption that an accused has no reasonable expectation of privacy in government property. *See, e.g., Samson v. California*, 547 U.S. 843, 848 (2006); Mil. R. Evid. 314(d). In *United States v. Long,* 64 M.J. 57, 63 (C.A.A.F. 2006), our superior court held that the accused had a subjective expectation of privacy in emails sent on her government computer, but this decision was based on the facts of that case, primarily the compelling testimony of the command's network administrator asserting the agency practice of recognizing the privacy interests of users in their email. A short time later, in *United States v. Larson*, 66 M.J. 212, 216, (C.A.A.F. 2008), the court reiterated that its decision in *Long* was rooted in the "particular facts of that case," and held that there was no expectation of privacy when the facts established that when the appellant logged on to the computer, he was required to click a button accepting conditions listed in a banner, which stated that the computer was Department of Defense property, was for official use, and that he consented to monitoring.

Appellant's case is more analogous to *Larson* in that to log on to his computer Appellant had to click on a banner acknowledging he was aware his computer activity could be monitored. Moreover, none of the evidence presented was password protected beyond standard system security protocols. The only evidence before us is that the evidence offered and admitted consisted of a history of Appellant's Internet usage immediately prior to and after the pretext phone call on 12 July 2013.

Trial defense counsel's decision not to file a motion to exclude the computer evidence and their decision not to object to its admission was not deficient. As clearly stated in their supporting affidavits, they made the decision based on their understanding of the law as well as the facts and circumstances surrounding a military member's use of government furnished computer equipment. "When an appellant argues that counsel was ineffective for erroneously waiving a motion, it makes sense to deny the claim if the appellant would not be entitled to relief on the erroneously waived motion, because the accused cannot show he was harmed by not preserving the issue." *United States v. Bradley*, 71 M.J. 13 (C.A.A.F. 2012) (citing *United States v. Cornelius*, 37 M.J. 622, 626 (A.C.M.R. 1993)).

After considering the totality of the evidence presented at trial, we find Appellant failed to meet his burden of demonstrating that his trial defense counsel's conduct resulted in prejudice. *See Green*, 68 M.J. at 361. The trial defense counsel made tactical decisions regarding the appropriate strategy they believed would be most successful in light of the totality of the evidence, including admissions by Appellant. This was an "objectively reasonable choice in strategy from the alternatives available at the time" to the defense. *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001). We decline to second-guess those reasonable decisions made at trial by defense counsel. *See United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006). In light of these conclusions and applying the applicable standards, we find Appellant has failed to meet his burden of demonstrating that any deficiency in his defense counsel's conduct resulted in prejudice.

*Failure by Military Judge to Disclose SSgt DK's Mental Health Records*[2]

Prior to trial, the defense requested, pursuant to Mil. R. Evid. 513, the mental health records of SSgt DK. The bases for the request were to determine what she may have said regarding the charged offense to her providers, what any diagnosis was, what treatment techniques were used, and what the effects of her treatment were on her ability to accurately recall the events in question and truthfully testify nine years later. The military judge held the required hearing where SSgt DK acknowledged seeing mental health providers at three duty stations but only speaking about the rape at one of those locations. SSgt DK's special victims' counsel (SVC) was present at the hearing and indicated to the military judge that he possessed what he believed to be all of SSgt DK's mental health records from those locations. He provided those records, totaling 96 pages, to the military judge.

The military judge performed an in camera review of the records. During that review, he determined that they were incomplete because one page indicated it was "page 1 of 2" but the next page was not in the records. The military judge informed counsel, including the SVC, and signed an order requesting the records be sent directly to him from the facility in question. In response, the military judge received 67 pages by email, some of which were duplicates, some were "new," and the "missing" page was still not provided.[3] After his review, he released 83 pages (out of 127[4]), including all but one page from the facility where she discussed the rape,[5] to the trial and defense counsel. The military judge announced that he reviewed the records with a "did she talk about this case" filter. After reviewing those documents, civilian trial defense counsel indicated that his expert opined that there were some records disclosed that should have generated additional records (questionnaires that typically result in notes when provider discussing those with patient). The consultant further asserted that there was nothing that caused him to ask for the notes, he was really just asking to see if they were present. The military judge indicated that those notes did in fact exist in what he had reviewed, but he did not find them relevant. After SSgt DK testified during sentencing, the military judge released all of her mental health records to both parties.

---

[2] These briefs were filed under seal and oral argument on this issue was conducted in a closed court proceeding based on the sensitive nature of the evidence. Our opinion excludes any direct references to the contents of the records except as necessary for this holding.

[3] Our review of the record confirms that there is a page in both Appellate Exhibit XXI and Appellate Exhibit XXXI that states it is page 1 of 2 and the page following is not page 2 of 2. However, a thorough comparison of the records reveals that there is a page 2 of 2 located in the records which follows what is marked as page 1 of 1. Furthermore, our review of the content of the page marked 1 of 2 and comparison to similar documents within the same set of records supports that page 1 contains all of the substantive records associated with that date's visit, including the signature of the provider. We do not believe this "missing" page, if it is in fact not contained elsewhere, affects the content of the records for that date.

[4] Although there were 163 total pages reviewed by the military judge, 36 pages were exact duplicates.

[5] One page, the General Instructions for completing the DD Form 2870 (Authorization for Disclosure of Medical or Dental Information) was not provided.

We review a military judge's ruling on a discovery request for abuse of discretion. *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F. 2004). "A military judge abuses his discretion when his findings of fact are clearly erroneous, when he is incorrect about the applicable law, or when he improperly applies the law." *Id.* In the case before us, like *Roberts*, we are reviewing the military judge's determination of whether this requested evidence was "material to the preparation of the defense" for purposes of the Government's obligation to disclose under Rule for Courts-Martial (R.C.M.) 701(a)(2)(A). "The military judge's determination of materiality in this respect is a question of law that we review de novo." *Id.* "Our review of discovery/disclosure issues utilizes a two-step analysis: first, we determine whether the information or evidence at issue was subject to disclosure or discovery; second, if there was nondisclosure of such information, we test the effect of that nondisclosure on the appellant's trial." *Id.* at 325.

Appellant now argues that the records are incomplete because there are no in-patient records despite the fact that a box was checked requesting both in and out patient records and that he should have received all of the mental health records as discovery, pursuant to R.C.M. 701. He asserts these records were material to the preparation of the defense in that they could have assisted the defense in the development of strategies, cross-examination, and argument on findings as well as sentencing. R.C.M. 701(a)(2)(B) entitles the defense, upon request, "to inspect . . . [a]ny results or reports of physical or mental examinations . . . which are within the possession, custody, or control of military authorities, the existence of which is known or by the exercise of due diligence may become known to the trial counsel, and which are material to the preparation of the defense . . . ." R.C.M. 701(g) places responsibility for regulating discovery on the military judge. R.C.M. 703(a) gives the prosecution and the defense "equal opportunity to obtain witnesses and evidence, including the benefit of compulsory process." However, because the information being sought is privileged, the articulated basis for materiality must first justify piercing the privilege.

With regard to the "missing" in-patient records, there is no showing that any actually exist. There is nothing more than a request for records which resulted in the production of only out-patient records. Additionally, when the records were provided to counsel after SSgt DK testified on sentencing, there was no inquiry or request for additional records by any party. Under Mil. R. Evid. 513(a), and in accordance with R.C.M. 701(f), records of psychotherapist-patient communication are generally protected from release during discovery. Among the enumerated exceptions permitting release, only Mil. R. Evid. 513(d)(8)—authorizing disclosure when "constitutionally required"—applies to the present case.[6] Appellant categorizes the withheld evidence as *Brady* evidence under *Brady v. Maryland*, 373 U.S. 83, 87, (1963) and *Giglio v. United States*, 405 U.S. 150, 154, (1972).

---

[6] In 2015, Mil. R. Evid. 513 was amended, eliminating the "constitutionally required" exception.

Appellant's reliance on a due process right to compulsory discovery was addressed by the United States Supreme Court in *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987). The court held that the Confrontation Clause[7] does not amount to a constitutionally compelled rule of pretrial discovery. *Id* at 52. Moreover, the holding explicitly stated that the Supreme Court "has never held—even in the absence of a statute restricting disclosures—that a defendant alone may make the determination as to the materiality of the information." *Id.* at 59. "There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). The Court in *Ritchie* held that in camera review by the judge, guided by a specific request by the defense for information alleged to be material ensures a fair trial. *Ritchie*, 480 U.S. at 60. In camera review balances the need to protect the privilege and the right to discovery of material information. The *Ritchie* ruling indicates that an evidentiary privilege may constitutionally prevent disclosure based on policy reasons, as Mil. R. Evid. 513 does.

Among the records not disclosed to the Defense was a two-page intake form, prepared in 2006, wherein SSgt DK denies being hurt within the last 12 months and does not circle the options "sexual abuse" or "victim of violence." Appellant argues before us that the comments on the form were inconsistent with SSgt DK's testimony and should have been released. We note, however, that the cross-examination of SSgt DK at trial repeatedly covered the fact that she had not reported the sexual assault to her providers prior to 2013, so while the intake form is inconsistent with her testimony that she was raped by Appellant in 2005, it is consistent with her testimony that she did not *report* the rape until years later. We recognize that SSgt DK's "statements" when filling out that intake form could constitute an inconsistent statement. We find that the judge abused his discretion by not disclosing these pages in discovery.

In *Roberts*, our superior court clarified the respective tests and burdens articulated in a number of their decisions dealing with materiality of undisclosed, discoverable evidence. They adopted two appellate tests for determining materiality with respect to the erroneous nondisclosure of discoverable evidence; the first test applies to those cases in which the defense either did not make a discovery request or made only a general request for discovery. *Roberts*, 59 M.J. at 326. In those instances, once the appellant demonstrates wrongful nondisclosure, "the appellant will be entitled to relief only by showing that there is a 'reasonable probability' of a different result at trial had the evidence been disclosed." *Id* at 326–27. "The second test is unique to our military practice and reflects the broad nature of discovery rights granted the military accused under Article 46. Where an appellant demonstrates that the Government failed to disclose discoverable evidence in response to a specific request or as a result of prosecutorial misconduct." *Id.* at 327. In those situations, "the appellant will be entitled to relief unless the Government can show that nondisclosure was harmless beyond a reasonable doubt."

---

[7] U.S. CONST. amend. VI.

In the case before us, the military judge reviewed the evidence under Mil. R. Evid. 513 and R.C.M 701. These facts distinguish the issue before us from a direct application of the process set forth in *Roberts* because there, our superior court held that it was not reviewing any trial level decision. *Roberts*, 59 M.J. at 327 n.3. Here, the military judge's decision to even conduct an in camera review must be given deference because it is a prerequisite to any further consideration of the evidence at issue.

The Defense rationale for piercing the Mil. R. Evid. 513 privilege was the need to consider prior inconsistent statements and possible memory reconstruction techniques. Based on Appellant's assertion that trial defense counsel's strategy was deficient, counsel now urge that we not only review the military judge's decision to conduct an in camera review and subsequent disclosure but also to substitute a completely different rationale for doing an in camera review focusing on SSgt DK's motive to lie. We give deference to the military judge's decision to conduct the in camera review based on the justification provided by trial defense counsel. Using that factual scenario, we will review the military judge's erroneous failure to provide those two pages using the "harmless beyond a reasonable doubt" standard.

SSgt DK's responses on the intake form, that she had not been raped or been a victim of violence, were both relevant to cross-examination. However, Appellant's counsel extensively cross-examined SSgt DK on her failure to report the sexual assault; the fact that while she did seek counseling for a number of issues, she never mentioned the sexual assault until 2013; her inability to recall details; and how her memory gained more specificity over the course of her interviews with OSI. Disclosure of the additional evidence from the mental health records regarding "untruthfulness by omission" by SSgt DK would not have created reasonable doubt that did not otherwise exist. The undisclosed information might have weakened the reliability of SSgt DK's testimony somewhat, but the fact that she had failed to report the rape for many years despite repeated counseling was before the factfinder. However, in light of the evidence of Appellant's guilt, much of it coming from his own admissions, any argument Appellant could have made would have been minimally effective, at best. This non-disclosure prior to sentencing was harmless beyond a reasonable doubt.

The remainder of the records that Appellant now cites as being impermissibly withheld by the military judge deal with evidence that he asserts could have been used to formulate strategy, investigation, and cross-examination. Primarily, Appellant asserts that if his trial defense counsel had known about the full extent of SSgt DK's insecurities, it *could* have changed their investigative and strategic decisions, to include conducting a stronger cross-examination and arguing this point to the factfinder. The only specific reference as to how these records would have been used comes from the declaration of the area defense counsel which says that it might have provided the "missing link they needed to substantiate their theory that SSgt DK had reconstructed her memory."

We review the military judge's decision not to disclose these matters using the "reasonable probability of a different result at trial if the evidence had been disclosed" standard. *Roberts*, 59 M.J. at 326–27. Impeachment evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985). "The determination of materiality 'calls for assessment of the omission in light of the evidence in the entire record.'" *United States v. Morris*, 52 M.J. 193, 197 (C.A.A.F. 1999).

While it is true that SSgt DK's credibility as to whether or not she consented was an issue, the only issue after Appellant's admissions on the pretext phone call, there is not a reasonable probability that the result would have been different had the evidence been disclosed to the Defense during findings.

### *Convening Authority's Denial of a Rehearing*

We review a convening authority's decision not to grant a post-trial hearing for an abuse of discretion. *United States v. Lofton*, 69 M.J. 386, 391 (C.A.A.F. 2011). A convening authority has discretion to order a post-trial Article 39a, UCMJ, session after authentication of the record, but before action under R.C.M. 1102. The purpose of a post-trial Article 39a session is to "resolve a matter that arises after trial and that substantially affects the legal sufficiency of any findings of guilty or the sentence." R.C.M. 1102(b)(2). As such, in *United States v. Scaff*, this court observed, "We view the purpose of R.C.M. 1102 as a vehicle for precluding a miscarriage of justice from occurring." 26 M.J. 985, 988 (A.F.C.M.R. 1988), *rev'd on other grounds*, 29 M.J. 60 (C.M.A. 1989). When taking action, the convening authority may order a rehearing under R.C.M. 1107(e). "A rehearing may be appropriate when an error substantially affecting the finding or sentence is noticed by the convening authority." R.C.M. 1107(e), Discussion. While there is interplay and similarities between a post-trial Article 39a session under R.C.M. 1102 and a rehearing under R.C.M. 1107, these options, and requests for them, are distinct and separate. *See United States v. Hull*, 70 M.J. 145, 151 (C.A.A.F. 2011).

In this case, Appellant requested both a post-trial Article 39a session under R.C.M. 1102 and a rehearing under R.C.M. 1107, but these separate requests were processed simultaneously as attachments to the addendum to the staff judge advocate's recommendation dated 20 November 2014. Both of Appellant's requests were primarily based on two types of evidence not introduced at trial—"Lt Col Brigg's Character" and "SSgt [DK]'s Character" as discussed earlier in the allegation of ineffective assistance of counsel. In the request for a post-trial Article 39a session, appellate defense counsel requested that the convening authority return the record to the military judge to consider the additional evidence (various statements regarding the character of both Appellant and SSgt DK) obtained since the court-martial adjourned that could affect the sufficiency of any findings of guilty or the sentence. In the request for rehearing, appellate defense

counsel admitted the evidence "could and should have been found" by trial defense counsel and therefore was not "newly discovered evidence" and asked the convening authority to order a full or partial rehearing if he elected not to disapprove the findings. On Appeal, Appellant only challenges the failure to order a rehearing.

In this case, a rehearing on the single specification of rape would have involved all of the trial stage procedures as a new trial under R.C.M 1210 and Article 73, UCMJ. While the convening authority is not obligated to apply the criteria for a new trial under R.C.M. 1210 and Article 73 when deciding on a request for rehearing, our superior court has indicated that a convening authority may find it useful to do so as a means of addressing such information early in the post-trial process, emphasizing "that 'requests for a new trial, and thus rehearings and reopenings of trial proceedings, are generally disfavored,' and are granted only if a manifest injustice would result absent a new trial, rehearing, or reopening based on proffered newly discovered evidence. *Hull,* 70 M.J. at 151–52 (quoting *United States v. Williams*, 37 M.J. 352, 356 (C.M.A. 1993)).

The concession by appellate defense counsel that the character evidence they now rely on is not "newly discovered" is significant to the resolution of error because evidence which could have been discovered through due diligence cannot form the basis for a request for new trial. See R.C.M. 1210(f), *United States v. Hecker*, 42, M.J. 640, 646 (A.F.C.C.A. 1995) and *United States v. Williams*, 37 M.J. 352, 356 (C.M.A. 1993). Furthermore, new evidence which is merely cumulative or impeaching is not an adequate basis for the basis of a new trial. See *United States v. Thomas*, 11 M.J. 135, 138 (C.M.A. 1981). Furthermore, because trial defense counsel made a tactical decision not to use character evidence, this petition for a new trial is nothing more than a "new tactic, not new evidence. This alone is sufficient to deny the petition." See *United States v. Day*, 14 C.M.A. 186, 33 C.M.R. 398, 401 (C.M.A. 1963).

While appellate defense counsel believes that the evidence of SSgt DK's character for untruthfulness would have been sufficient to alter the findings in this case, the evidence of Appellant's multiple adulterous relationships is equally relevant as to his credibility, not only for the relationships themselves, but also as to his efforts to conceal those relationships from his wife, friends, and co-workers. We are confident that in a judge alone trial, calling character witnesses whose testimony would have included their total ignorance as to Appellant's "other life" would not have altered the finding of guilty or the sentence. As such, the convening authority did not abuse his discretion when he denied a rehearing, and the denial of a rehearing was not manifestly unjust.

*Factual Sufficiency*

Appellant contends the evidence is factually insufficient to support his conviction in this case. We disagree.

Under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we review issues of factual sufficiency de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires that we approve only those findings of guilty that we determine to be correct in both law and fact. The test for legal sufficiency is whether, when the evidence is viewed in the light most favorable to the government, a reasonable fact finder could have found Appellant guilty of all elements of the offense, beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 324 (C.M.A.1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[I]n resolving questions of legal sufficiency, [this court is] bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," this court is convinced of Appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). Review of the evidence is limited to the entire record, which includes only the evidence admitted at trial and exposed to the crucible of cross-examination. Article 66(c), UCMJ; *United States v. Bethea*, 46 C.M.R. 223, 224–25 (C.M.A. 1973).

The issue here is solely whether the sexual intercourse between Appellant and SSgt DK was by force and without consent. The testimony of Appellant and SSgt DK conflict as to the details of the sexual encounter and both had significant memory gaps. Their recollections are in accord regarding their mutual consumption of alcohol, the location of the event, and the fact that it occurred the night before they were scheduled to return home from the TDY.

Factual sufficiency does not require that the evidence be free of conflict. While there are inconsistencies in the description of what took place between Appellant and SSgt DK that night in 2005, Appellant's own words to SSgt DK are highly persuasive in convincing us that he committed the offense: "I am so, so sorry for being selfish, for disrespecting you, for not listening to you . . . . I'm so sorry for pushing myself on you . . . and subjecting you to that; for not respecting you as a person and listening to you and stopping." Similarly persuasive, during his interview with the Air Force Office of Special Investigations he said, "[W]as I so selfish and immature and young and just ready to go that I—did I ever disregard what she said, did I ever do something that she did not want[?] . . . [I've] asked [myself] if rape happened and [my] answer . . . was 'I'm not sure, no' . . . that night altered [my] self-image."

This court is convinced beyond a reasonable doubt that the totality of the evidence is sufficient to support the findings of the military judge that Appellant raped SSgt DK.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court

ACM 38730